Nathanial **DORCUS**, Plaintiff,

v.

**WESTVACO CORPORATION**,
Defendant.

**Civ. A. No. 71-C-16-H.**

United States District Court,
W. D. Virginia,
Harrisonburg Division.

June 14, 1972.

————◆————

A. L. Larkum, Waynesboro, Va., for plaintiff.

Francis V. Lowden, Jr., Hunton, Williams, Gay & Gibson, Richmond, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

This action is brought by Nathanial Dorcus for injunctive and other relief pursuant to the authority of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, alleging that defendant Westvaco Corporation committed an unlawful employment practice in refusing to hire him because he is a Negro. Jurisdiction of the court is invoked pursuant to the Act[1] and 28 U.S.C. § 1343.[2]

Defendant, an employer within the meaning of 42 U.S.C. § 2000e(b), denies plaintiff's claim and asserts that the only reason it failed to hire him was his inability to qualify for employment.[3]

The essential facts are set forth in the record, including the depositions and admissions of fact. On October 9, 1968, plaintiff filed a written application for employment as a clerk at defendant's paper mill in Covington, Virginia. At that time his brother, father-in-law, and a cousin, all Negroes, worked at the plant. Harold Thompson, the company's personnel manager, advised plaintiff that no clerical jobs were then available. Although plaintiff had informed Mr. Thompson's receptionist that he would also take any available job in the labor force, he apparently did not so inform Mr. Thompson, or, in any event, Mr. Thompson did not so understand. In his application plaintiff noted that he had limited flexion of his knee, but he also listed sports as his hobbies. On October 29, 1968, Mr. Dorcus asked Mr. Thompson about employment in the labor force, but was informed that he could not be accepted for employment because of his disability.

Although plaintiff was denied employment, Mr. Thompson, according to customary practice, processed the application for future reference in the event that jobs he could perform became available. The application was sent to Dr. Edward M. Bowles, the plant physician, who wrote on the application that "due to age and physical defects, I would not pass this man for labor work at this mill." Although Dr. Bowles did not examine plaintiff after October 9, 1968, he had seen him twice in the previous nine or ten months. In the winter of 1967–68, he treated plaintiff's children for influenza, at which time plaintiff told him of his disability and inquired whether or not it would disqualify him for employment as a laborer. After examining plaintiff's knee and leg, Dr. Bowles indicated that because he could not "squat", the doctor would be unable to approve his application at the plant for such employment. He also advised Mr. Dorcus to apply for a salaried position. Sometime later, the two men met and discussed again the possibility of employment at the plant.

In further processing the application it also appears that Mr. Thompson contacted the principal of George Washington High School in New York City, from which plaintiff asserted he had received a diploma in 1955. On December 2, 1968, the principal replied that there was no record of plaintiff in the school files, including the Commencement lists of January and June 1955.

At the Covington plant in 1968 Westvaco employed 177 Negroes in a total work force of 2350 persons. During the period between October 1 and December 31, 1968, the company hired thirteen whites and one Negro for production (labor) jobs, of whom all were high school graduates. Within the shorter period from October 9 to October 29,

---

1. 42 U.S.C. § 2000e–5(f).

2. Jurisdiction is also invoked under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, which does not furnish an independent jurisdictional basis. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

3. Plaintiff originally brought this action as a class action pursuant to Rule 23(b) (2) of the Federal Rules of Civil Procedure. By order dated January 11, 1972, this court, after hearing, granted defendant's motion to dismiss the complaint insofar as it alleged a class action.

two employees were hired. The company generally requires that an applicant submit to an aptitude test and to a medical examination, but the practice is not followed where for obvious reasons an applicant is not qualified for employment. The company has established comparatively strict physical requirements for employment in the production (labor) force, and as evidence of these defendant has provided the applications of nineteen persons who have been rejected for various physical infirmities. Four white applicants were rejected for medical reasons during the period from October 1 to December 31, 1968; all were apparently examined by the plant physician.

After his application was denied by Westvaco, plaintiff sought employment in other industrial firms, but did not secure a job until January 3, 1969. On December 19, 1968, he filed written charges with the Equal Employment Opportunity Commission alleging denial of his rights by Westvaco in violation of the Title VII. After further complying with the requirements of the act, he filed this complaint on March 26, 1971. He requests this court to award as damages an amount equal to the minimum wages which he would have earned at Westvaco from October 9, 1968 to January 3, 1969. Both parties have filed motions for summary judgment.

■ Under 42 U.S.C. § 2000e–2(a) (1) it is an unlawful employment practice for an employer:

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

The Supreme Court, in Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) has adopted a two-step approach to determine whether or not an employment practice is prohibited by the Act. The first inquiry is whether the practice discriminates in form or in operation against any person on the basis of any impermissible criterion. The second is whether the practice bears a demonstrable relationship to successful performance of the job. 401 U.S. at 431, 91 S.Ct. at 853; See Johnson v. Pike Corporation of America, 332 F. Supp. 490, 493 (C.D.Cal.1971).[4]

■ It is not alleged, nor does any indication appear in the record, that the medical examination requirement constitutes a prohibited employment practice. The examinations involve only permissible discriminations, and they clearly bear a substantial relation to the adequacy of job performance in the labor force. Moreover, although the complaint alleges that the tests are not "professionally developed", as defined in the Act,[5] and are therefore unlawfully discriminatory, no evidence to support this claim has at any time been provided. Lastly, since it appears that no one was hired for non-production, i.e. salaried, positions from October 1 to December 31, 1968, plaintiff does not present any charge of unlawful practice involving these jobs.

It thus appears that the real issue before the court is whether or not the failure of the defendant to give plaintiff a medical examination constituted an unlawful employment practice within the meaning of 42 U.S.C. § 2000e–2(a) (1).[6]

---

4. In *Griggs* the court found that the requirements of a high school diploma and intelligence testing, even though adopted in good faith, operated to discriminate against Negroes and further found neither job requirement bore the required relationship to job performance. Although the court cited only § 2000e–2(a) (2), both

subsections of § 2000–2(a) were involved. Johnson v. Pike Corporation of America, supra at 493.

5. 42 U.S.C. § 2000e–2(h).

6. In his original complaint Mr. Dorcus alleged unlawful discrimination in the

In most of the cases where an applicant was denied employment for medical reasons, the company's decision was based upon its own medical examination or upon other affirmative evidence of disability, e.g. hospital or physicians' records, obvious infirmities. Plaintiff asserts that the refusal to hire him was based upon the mere opinion of Dr. Bowles, who could not determine when he examined him and who even doubted that he would have remembered the condition of the knee if the examination had occurred as remote in time as December 1967. Thus, it is argued, this obviously unexplained disparity in treatment necessarily raised the unrebutted inference that race was at least in part a factor in the company's refusal to hire plaintiff. The court does not agree.

That plaintiff does have a physical impairment which would in fact have legitimately prevented his employment as a laborer at the mill is not disputed. Whether or not Dr. Bowles could recall the specific time of the examination is not crucial, since he did in fact meet plaintiff, examine him, and note the disqualifying impairment on plaintiff's application before any of the company's officials became aware that plaintiff had filed charges against Westvaco with the Equal Employment Opportunity Commission. Furthermore, Dr. Bowles was acquainted with the Dorcus family, having treated Mrs. Dorcus and some of the children for various illnesses prior to 1968. The mere fact that Dr. Bowles reached his conclusion upon an informal examination rather than upon a medical examination under the company's auspices does not violate plaintiff's rights under the Act. Once it was determined that plaintiff could not meet the job's physical requirements, the company officials were justified in failing, at least in October 1968, to administer an aptitude test. In addition, although not required to do so, the company continued to process the application for future reference,

and it is not unreasonable to assume that the officials may have otherwise looked with favor upon the plaintiff in view of the fact that the company already employed three of his relatives. The court makes no determination regarding Westvaco's employment practices with respect to all applicants or employees. Rather it is only concerned that in this case the evidence fails to establish Westvaco's refusal to hire plaintiff was based upon an impermissible criterion within the Act.

Accordingly, it is ordered defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

It is further ordered that the case should be and is stricken from the docket, and each party shall bear his own costs.

---

treatment of existing employees by the defendant. This claim ceases to be an issue here since plaintiff was not permitted to maintain his action as a class action.