Varice SMITH, Jr., Plaintiff-Appellant,

v.

OLIN CHEMICAL CORPORATION et al., Defendants-Appellees.

No. 75–1024.

United States Court of Appeals, Fifth Circuit.

July 19, 1976.

Norbert A. Simmons, New Orleans, La., for plaintiff-appellant.

Wm. R. Tete, Lake Charles, La., William B. Dickinson, Stamford, Conn., for defendants-appellees.

[*] Due to illness WISDOM and THORNBERRY, Circuit Judges, did not participate in this decision. GOLDBERG and MORGAN, Circuit Judges, are recused.

Appeal from the United States District Court for the Western District of Louisiana.

Before WISDOM, GODBOLD and LIVELY,[*] Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiff-appellant Smith was hired February 8, 1973, as a laborer in the "utility pool" at the Lake Charles, Louisiana, plant of Olin Corporation.[1] Smith successfully passed a preemployment physical examination and performed satisfactorily during a probationary period. His continued employment depended on the results of a second medical exam generally given around the ninetieth day of an employee's probationary period. Such an exam was administered to Smith on May 9. Olin's medical director determined from x-ray reports that Smith had "bone degeneration with a prognosis of possible aseptic necrosis or further bone degeneration in his spinal region and was physically disqualified for any manual labor job at the plant, including the job of Laborer, Utility Pool." When apprised of the exam results, Smith informed the doctor that the bad back diagnosis could be explained by his history of sickle cell anemia, a blood disorder which affects black Americans almost exclusively. His personal physician subsequently corroborated the correlation. The Olin Corporation terminated Smith's employment on May 10.

Following notification by the Equal Employment Opportunity Commission of his right to institute an action in federal district court, Smith sued Olin, alleging a racially discriminatory deprivation of rights secured by 42 U.S.C. § 1981 and 42 U.S.C. §§ 2000e et seq., Title VII of the Civil Rights Act of 1964. Olin moved for summary judgment, and both sides filed briefs, affidavits and exhibits. The District Court rejected Smith's assertion, made in his complaint, that he was "discharged . . . because defendant suspected that [he] has sickle cell anemia, a disease common to Black Americans." The uncontroverted matter before the court on the motion for summary judgment did not disclose any knowledge or suspicion by Olin that Smith had sickle cell anemia but rather showed that Olin had no such knowledge or suspicion until after the company doctor had examined him, concluded that he had a bad back, and informed him that he was disqualified for employment.

The case must, however, be remanded for further consideration of the possible liability of Olin based on employment practices that are fair in form but discriminatory in operation. As it has been construed by the Supreme Court in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), Title VII of the 1964 Civil Rights Act requires "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification. . . . The Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation . . . Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation." *Id.* at 431–432, 91 S.Ct. at 853, 28 L.Ed.2d at 164–165. While Smith's pleadings are not a model of precision or clarity, the allegations regarding his discharge[2] sufficiently raise an "effect" claim as well as an "intent" claim. This court has continuously given wide scope to Title VII in order to remedy, as much as possible, the plight of persons who have suffered from discrimination in employment opportunities. *Rowe v. General Motors Corp.*, 457 F.2d 348

---

* Of the Sixth Circuit, sitting by designation.

1. Erroneously designated in the complaint as Olin Chemical Corporation.

2. Smith's complaint describes the nature of his claim in this way:

    "Defendant Olin Chemical Corporation has discharged Plaintiff for reasons made unlawful by Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Specifically,

    "(a) Plaintiff was discharged by defendant because defendant suspected that plaintiff has sickle cell anemia, a disease common to Black Americans.

    \* \* \* \* \* \*

    "(c) Plaintiff charges that his discharge on May 9, 1973 was unjust and for reasons made illegal by Title VII."

(C.A.5 1972), and cases collected therein at 354, n. 13. In the Title VII area, consistent with the full spirit of *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 28 L.Ed.2d 80, 85–86 (1957), we have been very liberal rather than technical in pleading requirements.[3]

Appellant's "effect" theory is more cogently articulated in his brief before us than it was before the trial court:

> Because sickle cell anemia affects Blacks almost exclusively, probability dictates that bone degeneration, a common condition resulting therefrom, would be present among proportionately more Black workers in a labor force than among workers of any other race. If the presence of bone degeneration is used to automatically disqualify a worker from a position which involves manual labor, proportionately more Black workers would be disqualified than workers of any other race. This is unquestionably a discriminatory effect within the meaning of *Griggs v. Duke Power* . . . Therefore the defendant has the very heavy burden of showing that business necessity requires continuation of the discriminatory practice.

We intimate no view on the validity of this theory, for it was neither acknowledged nor challenged in Olin's motion for summary judgment, and Smith did not seek to establish its underlying factual premises on a cross-motion for summary judgment.[4] We hold only that appellant is entitled to his day in court to submit proof, if he can, that Olin's practice preconditioning employment of persons as manual laborers on the absence of bad backs or degenerative bone conditions operates to discriminate against black Americans in substantially disproportionate percentages.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**3.** *See Smith v. Delta Air Lines, Inc.*, 486 F.2d 512 (C.A.5, 1973); *Danner v. Phillips Petroleum Co.*, 447 F.2d 159 (C.A.5, 1971); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (C.A.5, 1970).

**4.** Analyzing the legislative history of the summary judgment rule in the context of a civil rights claim raised in *Adickes v. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155 (1970), the Supreme Court stressed the Advisory Committee's statement that " '[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.' "

The Court concluded that both the commentary on and background of the 1963 amendment to Rule 56(e), "conclusively show that it was not intended to modify the burden of the moving party under Rule 56(c) to show initially the absence of a genuine issue concerning *any* material fact." (Emphasis added.) By showing conclusively that Smith was not discharged because he had sickle cell anemia, Olin's moving papers on summary judgment revealed the absence of a genuine issue concerning *its* discriminatory *intent*, a material fact made relevant by Smith's Title VII complaint. Olin's documents did not, however, even attempt to controvert another material and relevant fact, the discriminatory *effect* of the particular employment practice implicated in that complaint.