Varice SMITH, Jr., Plaintiff-Appellant,

v.

OLIN CHEMICAL CORPORATION et al., Defendants-Appellees.

No. 75–1024.

United States Court of Appeals,
Fifth Circuit.

July 18, 1977.

Norbert A. Simmons, New Orleans, La., for plaintiff-appellant.

William J. Jefferson, New Orleans, La., for Norbert Simmons.

Wm. R. Tete, Lake Charles, La., William B. Dickinson, Stamford, Conn., for defendants-appellees.

Before BROWN, Chief Judge, WISDOM, THORNBERRY *, COLEMAN, GOLD-BERG, AINSWORTH, GODBOLD, MOR-GAN, CLARK, RONEY, GEE, TJOFLAT, HILL, and FAY, Circuit Judges.

RONEY, Circuit Judge:

Plaintiff Smith brought this action alleging that his discharge from employment by Olin Chemical Corporation violated 42 U.S.C.A. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq. The district court granted summary judgment for the corporation, and a panel of this Court reversed. Smith v. Olin Chemical Corp., 535 F.2d 862 (5th Cir. 1976). After rehearing en banc, we reverse the panel decision and affirm the grant of summary judgment for the defendant by the district court.

On February 8, 1975, Olin Chemical Corporation hired Smith as a probationary employee classified "Laborer Utility Pool." He performed his work satisfactorily, and after 90 days was given a physical exam required of the firm's permanent employees. The exam X-rays of the plaintiff's spine led the company doctor to the conclusion that Smith had "bone degeneration with a prognosis of possible aseptic necrosis or further bone degeneration in his spinal region" and as a result was "disqualified for manual labor at the plant." When the doctor told Smith of that conclusion, Smith responded by saying the diagnosis could be explained by his history of sickle cell anemia, a blood disease found almost exclusively in descendants of tribes living in malarial regions of Africa. Smith was discharged.

I.

*The Sickle Cell Anemia Theory*

After the Equal Employment Opportunity Commission notified him of his right to sue, the plaintiff filed the complaint which began this action. The complaint alleged:

Defendant Olin Chemical Corporation has discharged plaintiff for reasons made unlawful by Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Specifically, (a) plaintiff was discharged by defendant because defendant suspected that plaintiff has sickle cell anemia, a disease common to Black Americans; . . . (c) plaintiff charges that his discharge on May 9, 1973, was unjust and for reasons made illegal by Title VII.

█ The theory of the complaint was straightforward. Classifying employees with sickle cell disease for discharge was "racial" and so violated the Act, 42 U.S.C.A. § 2000e-2(a). The corporation moved for summary judgment, and both sides filed briefs and affidavits. The uncontested evidence established that the corporation did not have a policy of firing persons with sickle cell anemia, did not know Smith had sickle cell anemia when it decided to discharge him, and did not even suspect sickle cell was the cause of his back problems. An affidavit from the company doctor indicated the bone degeneration was the sole reason for the discharge. The district court granted the motion for summary judgment, concluding that the plaintiff had failed to create a genuine factual issue concerning the "racial or other impermissible classification," Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), which the complaint alleged was the basis for the discharge.

Based on the pleadings and affidavits before the court, the grant of summary judgment was correct. The moving party met its burden of establishing there were no genuine issues of fact with respect to the complaint's allegation that sickle cell anemia was the basis for firing Smith. See Liberty Leasing Co. v. Hillsum Sales Corp., 380 F.2d 1013, 1014–1015 (5th Cir. 1967). Once the sickle cell trait was shown to be irrelevant, the plaintiff's claim collapsed, and the corporation was entitled to a judgment as a matter of law.

* THORNBERRY, Circuit Judge, did not participate in this decision.

## II.

### *The Issues on Appeal—Some Would Stop Here*

In his brief on appeal, the plaintiff asserted new facts and a different theory to support the claim that his discharge violated Title VII. In this argument, he asserts that even if the discharge was based on his bad back, rather than sickle cell anemia, *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) would be applicable. His brief contends that "if the presence of bone degeneration is used to automatically disqualify a worker from a position which involves manual labor, proportionately more black workers would be disqualified than workers of any other race . . . Therefore the defendant has the very heavy burden of showing that business necessity requires continuation of the discriminatory practice."

■ Some of the judges on this Court are reluctant to reach this issue. Alleging new facts on appeal is normally an insufficient means of resisting summary judgment. 6 *Moore's Federal Practice* ¶ 56.27[1] (2d ed. 1976); *see Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 n. 16, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). They would hold that the presence in the complaint of the conclusory allegation that the discharge was "for reasons made illegal by Title VII" did not adequately raise this second issue and should not have prevented the award of summary judgment. *See de Lorraine v. MEBA Pension Trust*, 499 F.2d 49, 51 (2d Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, (1974). As Fed.R.Civ.P. 56(e) says:

> an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Before the trial court, the plaintiff did not produce "specific facts" showing his general allegation posed a "genuine issue" for trial. To allow him to prevail would frustrate the purposes of summary judgment, and would encourage trial by ambush. *Robin Construction Co. v. United States,* 345 F.2d 610, 613–614 (3rd Cir. 1965).

## III.

### *Others Would Go On*

The panel which originally heard this appeal, however, dealt with this additional claim. 535 F.2d at 864. Indeed, the panel's treatment of this issue in a way that controlled the outcome of the appeal is precisely what brought this case to the en banc court. Many of the judges on the Court think that the merits of the claim need to be considered here because

(a) The panel dealt with the issue and it is appropriate for the en banc court to reach for the point in order to clarify the Court's position on the matter, even though it would have been better not to reach it in the first instance, or

(b) The plaintiff's problems with representation noted in the last portion of this opinion call for the liberal pleading approach noted in Judge Godbold's opinion.

> While Smith's pleadings are not a model of precision or clarity, the allegations regarding his discharge sufficiently raise an "effect" claim as well as an "intent" claim. This court has continuously given wide scope to Title VII in order to remedy, as much as possible, the plight of persons who have suffered from discrimination in employment opportunities. *Rowe v. General Motors Corp.*, 457 F.2d 348 (C.A. 5 1972), and cases collected therein at 354, n. 13. In the Title VII area, consistent with the full spirit of *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 28 L.Ed.2d 80, 85–86 (1957), we have been very liberal rather than technical in pleading requirements.

535 F.2d at 863–864 [footnotes omitted].

## IV.

### *The Bad Back Theory*

■ The panel which first heard this case determined that if the plaintiff could prove that the good back requirement disqualified blacks disproportionately more than whites,

the defendant would then have to come forward with proof of business necessity. Because there was no evidence on either of these points, the case on appeal must be viewed as if the plaintiff could prove his discriminatory effects theory. The question then is whether, assuming that the preconditioning of employment for manual labor on the absence of bad backs or degenerative spinal conditions operates to discriminate against black Americans in substantially disproportionate percentages, an employer should be forced to satisfy an evidentiary burden of proving business necessity under *Griggs*. We think not.

*Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), held that Title VII of the Civil Rights Act of 1964 requires the elimination of artificial, arbitrary and unnecessary barriers to employment that operate to invidiously discriminate on the basis of race unless the employer can show that the discriminatory practice is related to job performance. Lack of discriminatory intent or purpose of the employer is irrelevant.

As the cases have developed, once discriminatory effect is shown, the employer must carry a heavy burden of proof to show business "necessity" for the employment practice.[1] "[I]t involves a more probing judicial review of, and less deference to, the seemingly reasonable acts of administrators and executives than is appropriate under the Constitution where special racial impact, without discriminatory purpose, is

claimed." *Washington v. Davis*, 426 U.S. 229, 247, 96 S.Ct. 2040, 2051, 48 L.Ed.2d 597 (1975). *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

Few cases have dealt with the proposition that there are certain employment practices that will not trigger the requirement of proof from the employer. Indeed, some may assert that every practice which has a discriminatory effect requires some evidentiary proof from the employer to justify its use. We are not so ready, however, to permit bare "effects" allegations to carry the burden to the employer where the employment requirement is patently neither artificial nor arbitrary, and is obviously related to business necessity.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) clearly indicates that there is a narrow class of job requirements for which no evidentiary showing is needed. In *McDonnell Douglas*, the company refused to hire a black worker who had participated in a stall-in which illegally obstructed the company's business. The Court held that the prima facie case made by the plaintiff[2] was met by the employer's articulation of a legitimate, nondiscriminatory reason for the employee's rejection, that is, that he participated in unlawful conduct against the employer. That sufficed to discharge the employer's "burden of proof" at that stage. The employer had offered no proof of any

1. *Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721, 730 n. 18 (5th Cir. 1976) (test "a strict one"). The job requirement must be shown to be essential to the safe and efficient operation of the business. *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 879 (6th Cir. 1973); *United States v. St. Louis-San Francisco Ry.*, 464 F.2d 301, 308 (8th Cir. 1972) (en banc), cert. denied, 409 U.S. 1116, 93 S.Ct. 913, 34 L.Ed.2d 700 (1973); *United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 451 (5th Cir. 1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815 (1972); *United States v. Bethlehem Steel Corp.*, 446 F.2d 652, 662 (2d Cir. 1971); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 798 (4th Cir. 1971). *See Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385, 388 (5th Cir.), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971) (essence of

business operation); Sutter, *Current Procedural and Evidentiary Considerations Under Title VII of the Civil Rights Act of 1964: Ready for the Defense*, 6 Ga.L.Rev. 505, 520–521 (1972); Note, *Business Necessity under Title VII of the Civil Rights Act of 1964: A No-Alternative Approach*, 84 Yale L.J. 98 (1974).

2. The plaintiff established a prima facie case of discrimination by showing (i) he belonged to a racial minority; (ii) he applied and was qualified for a job for which the employer was seeking applicants; (iii) despite his qualifications, he was rejected; and (iv) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824.

effect on the plaintiff's ability to perform the work. *See Green v. McDonnell Douglas Corp.*, 463 F.2d 337, 342–344, 352–355 (8th Cir. 1972). Thus, as a matter of law, the Supreme Court held that the practice did not require evidentiary justification, and said that the only issue on remand would be whether the policy was used as a pretext. 411 U.S. at 800–804, 93 S.Ct. at 1823–1825.

■ Distinguishing the paper-and-pencil tests *Griggs* held discriminatory, the Court said the company

> does not seek his exclusion on the basis of a testing device which overstates what is necessary for competent performance, or through some sweeping disqualification of all those with any past record of unlawful behavior, however remote, insubstantial, or unrelated to applicant's personal qualifications as an employee. Petitioner assertedly rejected respondent for unlawful conduct against it and, in the absence of proof of pretext or discriminatory application of such a reason, this cannot be thought the kind of "artificial, arbitrary, and unnecessary barriers to employment" which the Court found to be the intention of Congress to remove.

*Id.* at 806, 93 S.Ct. at 1826. To support its holding, the *McDonnell Douglas* Court cited *NLRB v. Fansteel,* 306 U.S. 240, 255, 59 S.Ct. 490, 83 L.Ed. 627 (1939), a case permitting employers to fire strikers who commit illegal acts against the company. While in a footnote, 411 U.S. at 802 n. 14, the Court suggested an employee's "qualifications" were not at issue in *McDonnell Douglas,* the direct comparison with *Griggs* in the text and the company-wide nature of the policy indicate the holding has significance beyond its particular facts. It suggests that a facially neutral job criterion can be so manifestly job-related so as not to be "the kind of 'artificial, arbitrary, and unnecessary barriers'" Title VII prohibits. In such a case, the employer need not make an evidentiary showing of business necessity, even though the criterion may have a discriminatory impact.

The need for a manual laborer to have a good back is such a criterion. Smith argues that he was able to do the work. That begs the question when an employee has a defective back condition. *Roberts v. St. Louis Southwestern Ry.,* 329 F.Supp. 973, 975–977 (D.Ark.1971). Common knowledge and experience reflect the problems degenerative backs create for employer, employee and fellow employee alike. As noted in one text, an employer who hires an employee with a latent back defect is "asking for trouble." [3] Another explains:

> In many occupations x-ray of the low back has become a routine part of pre-employment physical examination. The presence of certain abnormalities in the low back, whether congenital or acquired, precludes the hiring of persons with pre-existing affections for certain jobs. This is so because many industries, especially those in which heavy physical labor is required or the danger of back strains constantly exists, know that trauma can and does aggravate pre-existing low back conditions.

Flaxman, *Low Back Affections—Aggravation of Pre-Existing Ailments* in The Medico-Legal Aspects of Back Injury Cases 273 (Schreiber, ed. 1965). The "trauma" necessary to trigger serious injury can be as slight as a taxi-driver's stoop to read his meter.[4] Not only do back defects endanger the employee, but when injury occurs, the employer's workmen's compensation insurance is taxed for the full disability, despite the pre-existing condition. *Southern Stevedoring Co. v. Henderson,* 175 F.2d 863 (5th Cir. 1949); *Johnson v. Travelers Ins. Co.,* 284 So.2d 888, 891 (La.1973); *see generally* Larson, The Law of Workmen's Compensation §§ 38.00, 38.30 nn. 63–65, 59.20 and n. 36 (1975) (collecting cases). Disability from low back symptoms has been said to cause more lost man hours than any other condi-

---

**3.** The Back: A Law-Medicine Problem 62–63 (Schroeder ed. 1965).

**4.** *See Rosenberg v. Netherland Cab Co.,* 269 App.Div. 914, 57 N.Y.S.2d 551 (1945), *leave to appeal denied,* 295 N.Y. 993, 65 N.E.2d 105 (1946).

tion.[5] Given the close association between back injury and lifting, a danger to co-employees exists if a worker is disabled in the midst of carrying a heavy weight.

The manifest job-relatedness of a requirement that a manual laborer have a good back is bolstered by the frequency with which physical fitness requirements generally have been found to be valid.[6] The Equal Employment Opportunity Commission has, for example, twice cited physical requirements in rebutting an individual's claim of discrimination. EEOC Dec. No. 70–694, CCH EEOC Dec. 4252 (1970); EEOC Dec. No. 70–840, CCH EEOC Dec. 4262 (1970). Physical fitness tests related to minimum standards for employment are recognized as a "reasonable factor other than age" which will excuse failure to hire a person protected by the Age Discrimination in Employment Act. 29 C.F.R. § 860.-13(f). The NLRB has recognized that an employer may discharge a pro-union employee who has a physical condition disqualifying him from work. *Shields*, 85 NLRB 168, 176 (1949). *See NLRB v. Industrial Cotton Mills*, 208 F.2d 87, 88–89 (4th Cir. 1953), *cert. denied*, 347 U.S. 953, 74 S.Ct. 630, 98 L.Ed. 1086 (1954); *Wanda Petroleum Co.*, 183 NLRB —— (1970), *enf'd per curiam*, 65 Lab.Cases 21,649 (5th Cir. 1971). Certainly not every physical requirement is so manifestly job-related as to make evidentiary proof unnecessary,[7] and some have even been found to lack sufficient business

purpose.[8] Where the requirement is so directly related to job performance as a good back is to manual labor, however, business necessity can be presumed.

We note that this case does not involve any claim that the employer uses the physical test as a pretext for discrimination,[9] nor is it asserted that the "good back" requirement is imposed on employees not engaged in manual labor.

In sum, without indicating at all what other physical requirements for various jobs would fall within the principle of this case, we hold that an employer does not have to justify with evidentiary proof of business necessity the exclusion from manual labor of any person with "bone degeneration in his spinal region," a bad back, even if such practice affects disproportionately some class protected by Title VII of the Civil Rights Act of 1964.

## V.

Counsel appeared for Mr. Smith on his original appeal and the briefs were available to the en banc court on rehearing. Without prior notice to this Court, his attorney did not appear at the oral argument hearing before the en banc court. Confronted with counsel's default, Mr. Smith stepped before the 13 sitting judges of this Court and presented his case with earnest and commendable zeal. Although we are

---

5. Colcher & Hursh, *Pre-Employment Low-Back X-Ray Survey*, 21 Ind.Med. 319 (1947).

6. Some courts have brushed aside claims of discrimination noting the manifest connection between physical fitness and job performance. *See Coleman v. Darden*, 13 Empl.Prac.Dec. 6788 (D.Colo.1977) (blind person denied job as law clerk); *Thompson v. Chrysler Corp.*, 382 F.Supp. 1317 (E.D.Mich.1974) (claim based on hypertension fails to show probable success on merits); *Dorcus v. Westvaco Corp.*, 345 F.Supp. 1173, 1174 (W.D.Va.1972) (manual laborer must have good knee); *Johnson v. Pittsburgh-Des Moines Steel Co.*, 2 Fair Empl.Prac. 668 (N.D.Ala.1970) (overweight endangers safety); *Metropolitan Dade County v. Wolf*, 5 Empl.Prac.Dec. 7336 (Fla.App.1973) (overweight).

7. For cases applying the business necessity test to physical requirements and finding the re-

quirement justified, *see Woods v. Safeway Stores, Inc.*, 420 F.Supp. 35, 42–43 (E.D.Va. 1976) (no-beards-on-salesmen policy constitutes justifiable discrimination against blacks with skin disease); *Hail v. White*, 8 Empl.Prac. Dec. 5712 (N.D.Calif.1973) (physical agility test for police allowed).

8. *See, e. g., Mieth v. Dothard*, 418 F.Supp. 1169 (M.D.Ala.1976) (three-judge court), *prob. juris. noted*, 429 U.S. 976, 97 S.Ct. 483, 50 L.Ed.2d 583 (1976) (police height and weight rules); *but see Smith v. Troyan*, 520 F.2d 492 (6th Cir. 1975), *cert. denied*, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976) (police height rules justified).

9. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

unable to agree with his position on the merits, we admire his determination and the manner in which he conducted himself before the Court. We have been careful in our review fully to explore the issues presented.

The judgment of the panel is reversed. The decision of the district court is

AFFIRMED.

GODBOLD, Circuit Judge, with whom WISDOM and GOLDBERG, Circuit Judges, join, dissenting:

I agree with the approach to the pleadings referred to in Part III(b) of the majority opinion. The pleadings of this plaintiff, read with the liberal interpretation which until now this court has given in Title VII cases, raised an "effect" case under *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), as well as an "intent" case, that is, whether Olin's employment practices (with respect to bad back discharges) were discriminatory in operation though fair in form.

The grant of summary judgment for defendant cannot be predicated upon the failure of plaintiff to come forward with facts in support of his "discriminatory effect" claim. Olin's motion for summary judgment and supporting affidavits simply did not address this claim because in the district court, and in this court on appeal, Olin has viewed the case as only involving intentional discrimination. The uncontested affidavit evidence that Olin did not have a policy of firing persons with sickle cell anemia, did not know Smith had sickle cell anemia when it decided to discharge him, and did not suspect that sickle cell anemia was the cause of his back problem, disposed of discriminatory intent but not of "discrimination in operation." There was no burden on Smith to come forward with factual matter concerning discriminatory effect since Olin's documents did not reach this aspect of the case—indeed, as already pointed out, Olin did not even consider it to be an issue.

I turn now from the erroneous procedural ground set out by the majority to the substantive validity of the grant of summary judgment. In every Title VII case where racial discrimination is charged there must be a threshold inquiry into whether the characteristic or quality that is the subject matter of alleged discrimination is race-related. In some instances the relation is obvious, as where an employer says, "I will not hire Negroes."[1] There are other qualities or characteristics which may be traceable to race but are not self proving, such as would be involved in an employer decision not to hire anyone with coarse hair or not to employ any person with Tay-Sacks disease.[2] In these circumstances the relationship between the characteristic or quality and race must be the subject of proof. Moving even further away from matters that are racial per se, the relation to race may be latent or affected by factors other than physical characteristics. An employer decision "I will not hire anyone living west of the river" is facially neutral, but a black plaintiff living west of the river would be entitled to prove, if he could, that the area is a black ghetto and that the employer's decision really is racially-related.

In *Griggs* itself it was necessary to establish that a practice not facially racial actually had a racial impact. It was not apparent that Duke Power's test requirements and diploma requirements discriminated against blacks. Rather these consequences had to be proved, and the proof consisted of the Supreme Court's taking judicial notice of its own prior decision. 401 U.S. at 430, 91 S.Ct. at 853, 28 L.Ed.2d at 163–64.

Turning to the present case, the inquiry relates to bad backs, or the absence of good backs. Alone, this facially neutral physical characteristic carries no indicia of race. It is like the requirement of a high school diploma in *Griggs* or a requirement that one not live west of the river. Whether bad backs are sufficiently related to race by

---

1. Or, in a sex discrimination case, "I will not employ anyone who might become pregnant."

2. A disease said to be peculiar to Jews.

virtue of the tendency of blacks to sickle cell anemia is a matter of proof. This plaintiff is entitled to his day in court to attempt to prove it. It would be necessary for him to bring forward evidence that sickle cell anemia produces bad backs in a high proportion of blacks and that substantially more blacks than whites were fired for bad backs (however caused). If plaintiff met these two elements of proof, he would make out a prima facie case. Olin would then be required to prove its defense of business necessity.

As an alternative ground of decision, the majority opinion moves to the ultimate question whether a requirement of a "good back" is a business necessity for a manual laborer employed by Olin at this particular plant, and concludes that the requirement is a business necessity. We do not know what work is done by a manual laborer in the pool of such employees at this Olin installation, whether he picks up heavy weights, sweeps floors, picks up trash from the grounds with a spearing stick, or polishes company cars. This court's ruling is based upon a two-word job description. The only evidence the court has with respect to the duties of persons in this job description at this plant is the tangential evidence that they have been within plaintiff's capacity to perform satisfactorily. Business necessity is a proper subject for factual inquiry at the trial level, not for appellate hunches reached in the dark.