FLORIDA EAST COAST RAILWAY COMPANY, *Appellant,* v. THE STATE OF FLORIDA BY FLORIDA RAILROAD COMMISSIONERS, *Appellees.*

Opinion filed May 5, 1919.

Chapter 5616, Laws of Florida, 1907, which authorizes the Railroad Commissioners by their Special Counsel in the name of the State to commence a suit in chancery against any railroad company to compel an accounting for and refunding of any money exacted from the patrons of the road by the company in violation of a rule or rate prescribed by the Railroad Commissioners is not invalid as being in conflict with Section 3 of the Bill of Rights of the Constitution of the State securing the right of trial by jury, nor does it violate Section 11 of Article V of the Constitution conferring jurisdiction upon the Circuit Courts.

An appeal from the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Decree affirmed.

*W. A. Blount,* for Appellant;

*Dozier A. DeVane, for Appellee.*

ELLIS, J.—The State of Florida by the Railroad Commissioners brought its bill in chancery against the Florida East Coast Railway Company under the provisions of Chapter 5616, Laws of Florida, 1907, to compel the railroad company to discover and set forth the names of all persons against whom it had made overcharges in violation of Rule 19 prescribed by the Railroad Commissioners, and the amount of such overcharges between October 12, 1912, and the 15th day of November, 1916, and that the railroad company be required to make payment of the amounts so discovered to be due in accordance with the provisions of the said Act of the legislature.

The railroad company, by its solicitors, demurred to the bill upon several grounds, two of which are argued, *viz:*

"2b. That the said statute so far as it purports to authorize the bill in chancery to compel payment is in violation of Section 3 of the Bill of Rights of the Constitution of the State of Florida which provides that the right of trial by jury shall be secured to all and remain inviolate forever."

"2c. That the attempt by said statute to create a jurisdiction in the Courts of Equity of the State of Florida to require the payment therein required under the circumstances therein stated is in violation of the provisions of the constitution of the State of Florida conferring

jurisdiction upon the courts of Florida in cases in equity."

The provisions of the act under which this suit is brought authorizes the Railroad Commissioners by their special counsel in the name of the State to commence a suit in chancery against any railroad company to compel the accounting for and refunding of any money exacted in violation of any rule or rate of the Commissioners, and in cases where the railroad company shall have become indebted or liable for damages to a large number of persons by reason of its failure to abide by or comply with the provisions of any rule, rate or regulation of the Commissioners, the statute requires the Commissioners to demand of the carrier by written notice served upon it a discovery of the names of all such persons and an accounting and payment to all such persons of all such indebtedness or damages. And if the carrier refuses or shall fail to make such accounting and payment within sixty days after such notice served, it becomes the duty of the Commissioners under the statute to institute proceedings in mandamus or mandatory injunction against such carrier to compel the making of such accountings and payments. The Act also makes provision for the payment of costs, attorneys' fees and expenses of such proceedings and distribution by the Court, of the money paid over, to the proper persons.

The bill alleges that in September, 1912, the Railroad Commissioners adopted and promulgated Rule 19, which affected intra-state shipments of freight passing over two or more lines, and not governed by Rule 1. The rule provided that no railroad which is a party to the haul should charge or receive for its services in connection with such shipment more than its maximum rate for the distance

hauled by it, less ten per cent, where the entire haul is over two lines, nor more than its maximum rate less twenty per cent where the entire haul is over three or more lines, nor in any instance more than the published rate applicable for the same movement when hauled as a one-line haul, but any such rate collected or received by any such roads as above prescribed may be divided among themsedves by the parties to any such rate in such proportion as may be agreed upon by them.  It is alleged that the rule became effective October 22, 1912; that the defendant, a common carrier, was subject to the provisions of the rule, but refused to put it into effect, and the Railroad Commissioners obtained from this court a writ of mandamus against the defendant to compel its obeyance of the rule, and the defendant put the rule into effect upon its line on November 15, 1916.  It is alleged that the defendant between October 22, 1912, and November 15, 1916, collected on each and every shipment of freight over its line the maximum rate without making the ten and twenty per cent reduction as required by the rule, and thus became indebted to a large number of persons in various amounts the aggregate of which is many thousans of dollars.

It is alleged that in January, 1917, the defendant not having paid the overcharge or amounts so illegally collected by it from the shippers, the Commissioners served notice in writing upon the defendant under the provisions of Chapter 5616, Laws of 1907, to discover the names of all such persons who had been overcharged between the dates named, and an accounting and payment to them of the indebtedness due in that behalf.  That sixty days have elapsed since such notice was served upon the defendant and it has failed and refused to make the

accounting provided for by the statute, and disputes and denies the authority of the Commissioners to demand the discovery or the accounting. The prayer is that the defendant be commanded to discover the names of the persons for whom it has carried any commodity between October 22, 1912, and November 15, 1916,. subject to Rule 19, and set forth the amount it has charged each and every shipper or consignee of commodities subject to the provisions of the rule between such dates without making the reductions provided by it, and that the defendant be compeled to make payment of each and every one of said amounts so discovered to be due, etc.

The purpose of the statute under which this proceeding was brought is to command the Commissioners to maintain a bill in chancery, in behalf of the patrons of the railroad who have been subjected to overcharges by it on shipments of freight over its line because of the violation by the railroad of a rate prescribed for the transportation of such freight, for restitution of such overcharges. The statute makes the Railroad Commissioners the representatives of the shippers who have ·been wrongfully overcharged for the service rendered, for the purpose of compelling the restitution to the shippers by the railroad guilty of such misconduct, of the money thus illegally exacted from the shippers for the service rendered.

The facts as disclosed by the bill and admitted by the demurrer present a case where a railroad corporation which is engaged in the business of a common carrier of freight has for a long period of time collected on each and every shipment of freight over its line an amount of money for each service, in excess of the rate prescribed by law for such service. In other words, the railroad corporation which is in the last analysis a trustee of

properties dedicated to the public use, and bound under the law to carry for reasonable compensation the property of persons who offer the same for transportation, has unlawfully and in disregard of a reasonable rate fixed by law for the service exacted from many persons who offered to it freight for transportation a sum of money from each in excess of the rate definitely fixed by authority of law for such service.

At common law an action could be maintained to recover from a carrier an overcharge exacted by it for a service rendered. The question of the reasonableness of the price charged for the service was determined by the jury. In such case that was the jury's only function. Where, however, a rate is fixed by law for a particular service, the question of the reasonableness of the rate is not an open one. That has already been ascertained and settled by authority of law. In an action therefore to recover an overcharge above the rate fixed by law there would be no duty whatsoever for the jury to perform, therefore no necessity for a jury. The transportation of the goods by the carrier being admitted, the legal rate to be charged for the service being definitely fixed and the amount actually charged being admitted, there would be no question of fact for the jury to decide. Order Number 19 of the Railroad Commissioners entitled shippers to the benefit of the rates thereby established. In the mandamus proceedings to compel the defendant to put the order into effect upon its road the burden was upon the defendant to show that the rate prescribed was inadequate. It failed to sustain this burden thereby showing that its failure to observe the order was unlawful. The money which it exacted from its patrons therefore in excess of the rate prescribed was an unlawful ex-

action. It was demanded by the defendant of the shippers pending the proceedings to enforce the order. The shippers could do nothing but comply with the unlawful demand pending the mandamus proceedings to enforce the order instituted for their benefit.

The situation is similar to if not identical with the case in which one against whom an erroneous judgment or decree has been made surrenders to his adversery property under such judgment or decree. In such case in the event of a reversal of the judgment or decree he is entitled to be restored by his adversary to that which he lost thereby. This right, said Mr. Justice PITNEY in the case of Arkadelphia Milling Co. v. St. Louis South. Western Railway Company et al., 249 U. S. 134, 39 Sup. Ct. Rep. 237, Adv. Ops. 1918-1919, p. 250, is well founded in equity. The doctrine, said he, has been most fully recognized in the decisions of the Supreme Court of the United States. In Northwestern Fuel Co. v. Brock, 139 U. S. 216, 11 Sup. Ct. Rep. 523, the plaintiff recovered judgment for a certain amount against the defendant. Afterwards, the judgment was reversed by the Supreme Court of the United States for want of jurisdiction. In the meantime the plaintiff had collected certain sums on the judgment. The Circuit Court, after reversal of the judgment, ordered restitution. The order was affirmed. Mr. Justice BREWER, concurring, said that he had thought the law to be otherwise, and that the Circuit Court being without jurisdiction to render the judgment for the plaintiff, was equally wtihout jurisdiction to render judgment in favor of the defendant against the plaintiff for restitution. But said he, "the result is so manifestly equitable, I am glad to know that I was mistaken."

It is true that in the case last cited the order of resti-tution was made by the court in which the erroneous judgment was entered, and that the order of restitution was made upon the principle that the court had the in-herent power by order to correct its own errors. The proceeding to enforce the restitution, said Mr. Justice FIELD, speaking for the court, is under the control of the court, the only requisite being that the opposite party shall be heard.

Under the English law the party against whom the erroneous judgment was entered was entitled to restitu-tion without a *scire facias* where there was a certainty of what was lost. See the authorities cited in Northwest-ern Fuel Co. v. Brock, *supra*.

In the case of Cullen v. Seaboard Air Line R. Co., 63 Fla. 122, 58 South. Rep. 182, this court said: "The com-mon law right to recover freight charges collected in ex-cess of *reasonable* rates, is essentially different from the right of action given by the statute to recover charges in excess of rates fixed by the Railroad Commissioners to-gether with expenses incurred in the recovery." The point of essential difference lies in the question of rea-sonableness of the rate which in the common law action must be determined by a jury before the amount to be re-covered, if any amount may be recovered, can be deter-mined; but in the right of action given by the statute the reasonableness of the rate is determined by law. There is a certainty of what amount is to be recovered. It is to be ascertained by mathematical calculation. The find-ing of a jury one way or the other could have no effect upon the amount to be recovered. It is the difference be-tween what the defendant actually charged for the serv-ice and what it should have charged under the rule. These

figures are to be furnished by the defendant, from its own books and records. As we have said, there is no question of fact to be settled. The shipments were made, the rate was paid, the rule was ignored, the excess charged and the amount thus overcharged is a matter of subtraction of a less sum from a greater. What possible function could a jury perform in such an investigation?

If it is considered that the right secured by the statute to demand the accounting and restitution has the effect directly or by implication to enlarge the chancery jurisdiction of Circuit Courts, is not such an enlargement of jurisdiction as is forbidden by the constitution, because it does not transfer to the courts of equity a cause in which the defendant is entitled to a trial by jury. See Briles v. Bradford, 54 Fla. 501, 44 South. Rep. 937; Wiggins v. Williams, 36 Fla. 637, 18 South. Rep. 859; Buckman v. State *ex rel.* Spencer, 34 Fla. 48, 15 South. Rep. 697.

It is a well recognized principle "established in the jurisprudence of this country that new rights unknown to the common law procedure of trial by jury may be created and provision made for their determination in the absence of a jury without violating the constitutional provision" for trial by jury. Wiggins v. Williams, *supra*; Johnson v. Price, 47 Fla. 265, 36 South. Rep. 1031; Hathorne v. Panama Park Co., 44 Fla. 194, 32 South. Rep. 812; Mills v. Britt, 56 Fla. 839, 47 South. Rep. 799.

In all essentials the case at bar is similar to the case of Akadelphia Milling Company v. St. Louis Southwestern Railway Company, *supra,* in which Mr. Justice PITNEY said: "It is a typical case for the application of the principle of restitution."

It is not improbable that without the aid of the statute equity would take jurisdiction to compel the accounting and discovery to one of the patrons of the railroad who had been by its unlawful policy compelled to pay to it a sum of money on every shipment made by him in excess of the rate definitely fixed by law. The railroad company is a quasi-public corporation. It is engaged in conducting a public business, it is a trustee of properties dedicated to public use. It has no authority, right or privilege to charge for any service more than the amount definitely fixed by law, every overcharge is an unlawful exaction of money from its patrons who are overcharged, the road is in duty bound to refund the overcharge, it is a definite sum easily ascertainable from the road's books of account, the transactions often involve complications requiring mathematical calculation to make clear. There is no function for a jury to perform and the patron of the road by every principle of justice is entitled to restitution. Why should equity not grant the relief? "It is no objection to the exercise of jurisdiction that in the ever-changing phases of social relations a new case is presented and new features of wrong are involved where merely novelty in incident not in principle appears. A court of equity may not assume a jurisdiction which is non existent, but it may amplify remedies or avail itself of new remedies and unprecedented orders to meet an emergency when such are based on sound principles and calculated to afford necessary relief without imposing illegal burdens." 10 R. C. L. 263.

The decree appealed from is, therefore, affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, JJ., concur.