372 So.2d 133 (1979)
Michael P. ZORICK, Appellant,
v.
Jesse P. TYNES, Jr., Superintendent of Schools, Clay County, Florida, and Clay County School Board, a Public Corporation, Appellees.
No. II-4.
District Court of Appeal of Florida, First District.
June 8, 1979.
*135 William J. Sheppard, Jacksonville, for appellant.
Frank M. Scruby of Scruby, Yonge & Cobb, Orange Park, for appellees.
ROBERT P. SMITH, Jr., Acting Chief Judge.
The presumed incapacity of the blind is a profoundly disabling heritage, preventing demonstration of ability in fact. To dissolve that presumption in the public sector, the Florida legislature forbids public employers to refuse an applicant employment because of his blindness alone, "unless it is shown" that blindness prevents satisfactory performance of the work. Section 413.08(3), Florida Statutes (1977).[1] Federal legislation *136 to the same end is more cautious in terms and effect, offering administrative and judicial remedies for systemic discrimination against qualified handicapped job applicants in federally-funded state employment programs, but deferring to local employment decisions that are not shown to be irrational. Section 504 of the Rehabilitation Act of 1973, Title 29 U.S.C., Section 794.[2] Invoking both the Florida and federal laws, Zorick demanded circuit court remedies, injunctive and monetary, because Clay County tendered him, then for his blindness denied him, employment as a physical education instructor at Middleburg Elementary School. The court found the federal law inapplicable but held that, in the circumstances of this case, Florida Statute 413.08(3) requires Clay County so to employ Zorick,
that he might have the opportunity to demonstrate whether or not he can satisfactorily perform the work of a physical education teacher at Middleburg Elementary School.
Zorick, blind since birth but skilled through education and experience in music and physical education, applied by mail for a teaching position in the Clay County school system. The system personnel coordinator offered Zorick a teaching position in physical education at the Middleburg Elementary School for the 1974-75 school year, and sent Zorick a contract to sign. Zorick accepted. When the principal and personnel coordinator learned that Zorick was blind, they withdrew the offer and withheld recommendation of Zorick's employment to the superintendent of education, who therefore made no recommendation of employment to the district school board. See Section 230.33(7)(d), Florida Statutes (1977).[3] Two years later Zorick brought this action for damages, injunction and attorney's fees.
Testimony at the final hearing showed that the school officials withdrew their offer to Zorick because they considered that an unsighted person, supervising and teaching physical education to a large group of elementary school children on an open playground, would be unable to prevent the children from leaving and would be handicapped in supervising the children's safety at play. The defendants also introduced opinion testimony by sighted persons that a blind teacher could not effectively teach the rudiments of the school's programmed sports, which progress in complexity from drop-the-handkerchief to tag football, baseball and basketball. On the other hand, Zorick presented unsighted witnesses who testified to opinions, based on personal experience, that Zorick and others without sight are able satisfactorily to supervise children and teach them the rudiments of sports in which sighted persons rely heavily on their sight.
Judge Black's final judgment:
1. That the plaintiff, MICHAEL P. ZORICK, was hired by the Clay County School Board in August, 1974, as a physical education teacher at Middleburg Elementary School for the school year commencing September, 1974.
2. That the plaintiff was subsequently found to be blind and that based upon his blindness the plaintiff was informed that the job of physical education teacher at Middleburg Elementary School was no longer available.

*137 3. That at no time was the plaintiff afforded the opportunity to show that he could satisfactorily perform the work involved as a physical education teacher at Middleburg Elementary School.
4. That since August, 1974, the plaintiff has made no effort to get employment of any kind, other than two attempts at the City College, spending his time and efforts training for the United States Olympic Team and supporting himself with Social Security benefits. The plaintiff did not file a complaint until two years later on August 6, 1976.
5. That the Federal Statutes are not applicable in this case in that Section 413.08(3), Florida Statutes, ... is applicable. Equity and the law of the State of Florida would demand that the plaintiff be given an opportunity to demonstrate whether or not he can satisfactorily perform the work of physical education teacher at the Middleburg Elementary School. The plaintiff was denied that opportunity.
It is therefore
ORDERED that the defendants, JESSE P. TYNES, JR., individually and as Superintendent of Schools, Clay County, Florida, and CLAY COUNTY SCHOOL BOARD, a public corporation, forthwith give to the plaintiff, MICHAEL P. ZORICK, a position as physical education teacher at Middleburg Elementary School in order that he might have the opportunity to demonstrate whether or not he can satisfactorily perform the work of a physical education teacher at Middleburg Elementary School.
Zorick contends on appeal that the evidence shows as a matter of law that the school officials, refusing to fulfill their offer of employment, impermissibly discriminated against him because he is blind. He asserts entitlement to back pay, attorney's fees, and a permanent injunction for his employment. The school officials cross-appeal from the order for trial employment. We affirm the circuit court.

I
We first consider Zorick's claim that the circuit court erred in declining to recognize his asserted Florida-enforceable rights under federal constitutional and statutory law. In the face of the circuit court's finding that Florida Statute 413.08(3) affords Zorick both a right and a remedy, the implication of Zorick's insistence on asserted federal rights is that they may be greater in substance than that afforded by Section 413.08(3), or at least richer in content given by federal judicial and administrative decisions, and that attorney's fees may flow more readily from federal statutes than from Florida's.
A section 1983[4] action to redress the deprivation of due process and other federal constitutional rights may indeed yield attorney's fees. Title 42 U.S.C., Section 1988.[5] But assuming that Florida courts have power to entertain section 1983 suits, and to grant attending remedies, see Metropolitan Dade County v. Wolf, 274 So.2d 584 (Fla.3d DCA 1973), cert. den. 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743, the short answer to Zorick's claim of a due process violation is that his blindness did not subject him to an irrebuttable presumption of incompetency as a classroom teacher of sighted students;[6] he was refused a *138 particular physical education job at a particular school because of job-related requirements. Whatever may be Zorick's rights under Florida or federal statutes, the Fourteenth Amendment did not forbid Clay County's conduct. See Smith v. Olin Chemical Corp., 555 F.2d 1283 (5th Cir.1977); Davis v. Southeastern Community College, 574 F.2d 1158, fn. 6 (4th Cir.1978); Coleman v. Darden, 595 F.2d 533 (10th Cir., 1979).
Zorick's more plausible federal claim arises under Section 504 of the Rehabilitation Act of 1973, supra n. 2, which applies to the Clay County school system as a recipient of federal financial assistance. As Zorick rightly perceives, rules of the Department of Health, Education and Welfare purport to add flesh to the statutory bones by requiring, for example, that federal-aid recipients
make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program. 45 C.F.R., Section 84.12(a).
HEW rules say also that "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions." 45 C.F.R., Section 84.12(b).
On three alternative grounds we find that the trial court was correct in refusing to recognize Zorick's claim under section 504:
First, section 505(a)(2) of the Rehabilitation Act, added by Congress in 1978,[7] extends to section 504 discriminatees the remedies of Title VI of the Civil Rights Act of 1964, Title 42 U.S.C., Sections 2000d et seq., which provide in part:
Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer ... except where a primary objective of the Federal financial assistance is to provide employment. Title 42 U.S.C., Section 2000d-3.
The court of appeals for the Fourth Circuit has held that the 1978 legislation by implication restricts private suits as well as those "by any department or agency." and "simply confirms a plausible reading of § 504 as originally enacted." Trageser v. Libbie Rehab. Center, Inc., 590 F.2d 87, 89 (4th Cir.1978). Here, as in Trageser, there is no suggestion that "a primary objective" of the federal financial aid to Clay County "is to provide employment." In the absence of such a showing  which we would permit on remand were this our only ground for decision  Zorick has no private section 504 claim in any court, state or federal.
Second, with due regard for the Supremacy Clause and the corresponding duty of Florida courts to enforce federal statutes not exclusively committed to the care of federal courts, especially when judging analogous Florida-based rights,[8] no Florida court can undertake responsibility for a federal statute without concern for its own power to effectuate a judgment as would a federal court, and for the short reach of Florida procedural tools which are "adequate and appropriate"[9] when we act *139 within our accustomed jurisdiction. When a Florida court accepts jurisdiction of a federal statutory claim, we receive the federal creature hide and hair, we take it all: the statute, the federal judicial decisions (uniform or not) construing it, and the gloss and other consequences of federal administrative action upon the statute.
Considering these implications in the case of section 504 of the Rehabilitation Act of 1973, we think the trial court and we have a "valid excuse"[10] for choosing not to embroil Florida's judicial process in a probably ineffective attempt to ascertain Zorick's federal statutory rights and, if they are found, to implement them. In a federal court, if Zorick showed that Trageser is incorrect or its requirements satisfied, questions would yet arise whether and when a private right of action arises to remedy section 504 deprivations. Before rules establishing HEW's enforcement apparatus became effective in May 1977, 45 C.F.R. Part 84, federal courts implied a private right of action from section 504.[11] Since then federal courts have asked, Does the primary jurisdiction of HEW afford a "meaningful" remedy for the vindication of private rights, so requiring prior exhaustion of the administrative remedy? To that question, federal courts have answered Yes,[12] No,[13] and Maybe.[14]
From these disparate opinions it is evident that the availability of federal judicial recourse is largely determined by some court's current assessment of HEW capacity in law and in fact. Federal courts are capable of such inventories; those courts can and do monitor HEW by review of its orders,[15] rules and dockets; and they can and do fashion temporary injunctive relief pending coordinated exhaustion of administrative remedies. Florida courts lack those federal powers of judicial access and review; and, as regards HEW, we lack our own accustomed powers, afforded by Chapter 120, Florida Statutes, for review and enforcement of Florida agency action required by law. In respect to section 504, therefore, Florida courts lack effective power to require agency action, or to review it, or to assess its adequacy as a predicate for determining the availability of judicial remedies. Without those essential procedural devices for determining the adequacy of federal administrative remedies in this somewhat unsettled time, we decline to grasp the section 504 nettle, and we agree with the trial court that section 504 is inapplicable in the disposition of Zorick's claim.
And third, if Zorick's claim under section 504 of the federal Rehabilitation Act were otherwise cognizable, it is groundless on the merits. Certainly Zorick was denied *140 employment as a physical education instructor because he is blind. But no federal court construing section 504 in any context has held that federal-aid recipients may not, in decisions on hiring and program participation, enforce standards for physical capacities reasonably related to the work or program concerned. Gurmankin v. Costanzo, supra n. 6, did not rest on section 504, which was not in effect, but on the court's finding that an unconstitutional irrebuttable presumption of incompetence had excluded a blind teacher-applicant from the qualifying examination to which sighted persons were admitted. Assuredly, Gurmankin would have invoked section 504 had it been available;[16] but refusing a blind person (Zorick) employment as a teacher of team sports requiring hand-and-eye coordination cannot be equated with refusing one (Gurmankin) any teaching job at all.[17] Section 504 does not forbid recipient school districts to exclude partially blind students from contact sports. Kampmeier, supra n. 11, at 300.[18] If Zorick is unable to teach physical education and supervise play because he is blind, section 504 affords him no more relief than if he were unable to do so for other reasons. Smith v. Olin Chemical Corp., 555 F.2d 1283, 1288 n. 6 (5th Cir.1977), (discharge for a bad back is not discrimination against the racially discrete group which is susceptible to sickle cell anemia).
The Tenth Circuit's recent decision in Coleman v. Darden, 595 F.2d 533, (10th Cir., 1979), did not involve section 504 of the Rehabilitation Act, for the court found that a federal agency is not a federal-aid recipient. Nevertheless, acting under its power to review federal administrative decisions, the court tested for rationality the agency's decision not to employ Coleman, blind and educated as a lawyer, as a research analyst. As we presume that rationality in an employment decision may preserve it against a section 504 attack, the Tenth Circuit's decision enlightens this one. The federal agency employed blind lawyers (assisted by readers) in certain positions, but not as research analysts, whose duties were "evidence preparation and data interpretation." The agency decided against readers for blind research analysts because it "concluded that ... the duties would be performed by the reader and not by the visually handicapped person." The court found the agency decision "not arbitrary or capricious," because the ability to read unassisted was reasonably related to the work of a research analyst:
Undoubtedly, the defendants would also have required an applicant to possess the ability to understand the English language, although that ability was not listed as a specific job requirement. However, that does not mean, and certainly Coleman would not seriously argue, that a person alleging discrimination on the basis of national origin could demand that the agency permit him to prove that he could perform the job with the aid of an interpreter provided by the agency. [595 F.2d at 540.]
In his testimony before the circuit court, Zorick conceded the possibility, in supervising the play of elementary school children and in teaching them, say, baseball, that he would be required to rely on what the children themselves told him about the whereabouts of Johnny, how Mary was swinging the bat, why Alice fumbled the grounder to short. We need not pursue further the parallel between this oral translation of visual images on the playground and the hypothetical reader's analysis of Coleman's raw work material; it is enough for section 504 *141 purposes, we think, that a federal court would not likely regard Clay County's decision concerning Zorick as arbitrary, capricious, or groundlessly discriminatory against the blind.

II
Zorick's federal claims being unavailing, we turn to his Florida-based claim on which the circuit court found Zorick entitled to trial employment as a physical education teacher, "that he might have the opportunity to demonstrate his ability, though blind, to perform satisfactorily." In contrast to Zorick's complex and attenuated federal claims  abounding with issues concerning the reach of section 504, the capacity of HEW in law and fact, the delicate touch that federalism requires to reconcile national funding policies with local employment responsibilities  Zorick's Florida claim is directly traceable to the Constitution, which provides in Section 2 of the Declaration of Rights:
No person shall be deprived of any right because of race, religion or physical handicap.
Section 413.08(3), Florida Statutes (1977), supra n. 1, implements this constitutional assurance in terms luminously clear and specific. "It is the policy of this state" that the blind "shall be employed" in the public schools, and no school employer shall refuse employment to the blind "on the basis of the disability alone" unless it is shown that blindness "prevents the satisfactory performance of the work involved." We think it clear, as did the trial court, that Section 413.08(3) creates a private right of action for its enforcement. Girard Trust Co. v. Tampashores Development Co., 95 Fla. 1010, 117 So. 786 (1928); Florida Constitution, Article I, Section 21.
"Unless it is shown" is the heart of Section 413.08(3). The Legislature might have omitted "unless it is shown" from the bill and still have produced a conventionally understandable law: No employer shall refuse employment to the blind unless blindness prevents satisfactory performance of the work involved. Such a law would presumably be understood as permitting the plausibly rational but untested opinions of public employers, having discretion, to prevail in effortless litigation against opinions of the untested blind. But the Legislature did not omit "unless it is shown", and we ungrudgingly give those words their natural effect:
"Unless it is shown" inescapably implies legislative recognition of the handicapped's heritage of presumed incapacity, and a legislative purpose to upset that status quo ante. Those words declare that, in Florida public employment decisions, there shall be no presumption, whether rebuttable or irrebuttable, that the physically handicapped are unable to perform satisfactorily tasks previously reserved for the fully ablebodied. Incapacity due to a physical handicap must be "shown".
"Unless it is shown" does not refer alone to the quality of proof to be offered by an employer defending litigation under section 413.08(3), following a decision not to employ. The statute does not say the court shall award the applicant a rightful position "unless [incapacity] is shown"; the command is that employment shall not be refused "unless it is shown". Though the judicial power is clear enough if finally necessary, the statute refers principally to the employer's decision in the first instance, not to the court's evaluation of the evidence months or years later.
"Unless it is shown" invokes a verb of vision  an ironic touch, when blindness is the issue. Thus, a public employer exercising discretion in employment decisions affecting the handicapped must take care that the operative incapacity is not his own dearth of knowledge, experience and ingenuity. The incapacity must be "shown" to be that of the applicant, and that may be shown by the employer's particularized knowledge of the work of the similarly handicapped or, lacking such experience, by testing, interview, or trial employment of a particular applicant. The employer's decision is still his own, and in court his sound discretion yet reigns; but that discretion *142 must be particularly informed, or "shown". This requirement is no more than that of rationality which we, borrowing from Judge Bazelon, have applied in varying contexts: when the public employer has faithfully observed constitutional and statutory procedural safeguards, fully explored all relevant facts, opposing views, and possible alternatives, and as a result of that exploration makes an ultimate decision which reflects that exploration, then the decision is made and made well; and the court considering section 413.08(3) will declare the decision rational, and be not concerned with whether it is also correct and wise. See Hill v. State, 358 So.2d 190, 209 (Fla. 1st DCA 1978); State ex rel. The Tallahassee Democrat, Inc. v. Cooksey, 371 So.2d 207, p. 210 (Fla. 1st DCA 1979).

III
By the standard of section 413.08(3), it was not "shown" in the circumstances of the school officials' decision to refuse Zorick the tendered employment, that Zorick was and is incapable, by reason of his blindness, to perform satisfactorily. The decision to withdraw the employment offer was based, not on any identifiable experience of school administrators in Clay County or elsewhere, not on a test or interview of Zorick or any trial of his abilities, but on ordinary preconceptions of sighted administrators which section 413.08(3) now makes inoperable.
To remedy the deprivation of Zorick's rights, the circuit court was empowered at least to require a trial employment of sufficient length to dispel the preconceptions which tainted the original decision, replacing them with personalized knowledge of all relevant facts pertaining to Zorick's capacity or lack of it.[19] On Zorick's appeal, by which he seeks rightful permanent instatement with monetary damages, we affirm because the evidence does not show that he is qualified as a matter of law. On the school officials' cross-appeal, the circuit court's judgment will also be affirmed, with jurisdiction retained in the circuit court to grant such other and further relief as may be required.
We note the school officials' contention that, absent a recommendation of employment by the superintendent to the board, Zorick has no right of employment and therefore no cause of action for the withholding of employment. Where as here the board and superintendent have effectively delegated recommending power to a subordinate, the coordinator of personnel, and that subordinate is shown to have exercised de facto power to employ, the board and superintendent share, for purposes of an action such as this, vicarious responsibility for any unlawful purpose of the subordinate. Columbia County Board of Public Instruction v. Public Employees Relations Commission, 353 So.2d 127 (Fla. 1st DCA 1977); Witgenstein v. School Board of Leon County, 347 So.2d 1069 (Fla. 1st DCA 1977).
We are without power to order the payment of attorney's fees, as Zorick urges. See Kittel v. Kittel, 210 So.2d 1, 3 (Fla. 1968); but see Serrano v. Priest, 20 Cal.3d 25, 47, 141 Cal. Rptr. 315, 327, 569 P.2d 1303, 1314 (1977). The case would be different had it come to us for review of administrative action under Section 120.68, Florida Statutes (1977). Section 120.57(1)(b)9. No question was raised here concerning the adequacy of any remedies Zorick may have had under Chapter 120. See Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park Inc., 361 So.2d 695 (Fla. 1978); State ex rel. Dept. of Gen. Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977).
AFFIRMED, REMANDED.
ERVIN, J., concurs.
MELVIN, J., dissents.
*143 MELVIN, Judge, dissents.
I regret that I am unable to agree with the conclusions reached in the majority opinion. I am unable to find from a search of this record any evidence that would support a finding that Zorick would be physically able, as an unsighted person, to instruct and supervise the physical education activities of a large group of elementary children on an open playground without the active assistance of another person or persons to advise him as to the manner in which the children were performing. It is obvious that Zorick would be unable to discern by his sense of hearing the reason why a student was missing a baseball or was improperly holding a football or was making an improper approach to the basket in a basketball game. All of that information would, of necessity, have to be relayed to him by some person who is blessed with the sense of sight. Further, the record reveals that the playground referred to is adjacent to a busy highway and this presents the acute question as to the welfare and safety of the children on the playground. It appears without dispute in this record, as I read it, that Zorick would be dependent upon other students or some other instructor to advise him if a student decided to dart away from the playground.
Aside from the fact that Zorick was never employed by the school system of Duval County in the manner provided by law, Section 230.33(7)(d), Florida Statutes (1977), I find nothing among the provisions of Section 413.08(3), Florida Statutes (1977), that would authorize or even permit the type of judicial experiment that is now mandated. I am certain that all concerned indulge in the hope that tragedy will not stalk the playground during the "on-job tryout" program that has now with judicial pen been written into the statutes of this state.
The majority now sets the stage for an unsighted person to require an "on-the-job" opportunity to demonstrate his ability, or lack thereof, to serve as a fireman (presumably another to point the fire hose) or as a vehicular traffic control officer.
More need not be said.
NOTES
[1] Section 413.08(3), Florida Statutes (1977):

It is the policy of this state that the deaf, blind, visually handicapped, and otherwise physically disabled shall be employed in the service of the state or political subdivisions of the state, in the public schools, and in all other employment supported in whole or in part by public funds, and no employer shall refuse employment to the deaf, blind, the visually handicapped, or otherwise physically disabled on the basis of the disability alone, unless it is shown that the particular disability prevents the satisfactory performance of the work involved.
[2] Title 29 U.S.C., Section 794:

No otherwise qualified handicapped individual in the United States [including persons whose blindness "substantially limits one or more of such person's major life activities" or "is regarded as having such impairment," Tit. 29 U.S.C. Sec. 706(6)] shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
[3] Section 230.33(7)(d) provides that the superintendent shall "[c]onfer with the principals and submit in writing to the school board his nominations of all other persons to be appointed or reappointed as members of the instructional staff of the district school system." Ultimate authority to employ a teacher rests with the school board. School Board of Leon County v. Goodson, 335 So.2d 308 (Fla. 1st DCA 1976), cert. den. Fla. 346 So.2d 1248.
[4] Title 42 U.S.C., Section 1983:

Every person who, under color of any . . custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . .. to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
[5] Title 42 U.S.C., Section 1988:

... In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title ..., or title VI of the Civil Rights Act of 1964 [Tit. 42 U.S.C., Sections 2000d et seq.], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.
[6] Gurmankin v. Costanzo, 556 F.2d 184 (3d Cir.1977). The court held that the Philadelphia School District subjected Ms. Gurmankin "to an irrebuttable presumption that her blindness made her incompetent to teach sighted students" by excluding her, on that ground, from the qualifying written examination for teachers.
[7] Act of November 6, 1978, Pub.L.No. 95-602, Section 120, 92 Stat. 2983, to be codified as 29 U.S.C., Section 794a(a)(2). See 1 U.S.Code Congr. & Admin.News (95th Cong. Second Sess. 1978) at 2983.
[8] United States Constitution, Article VI Clause 2, Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); Douglas v. New York, N.H. & H.R. Co., 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929). See Cullison, State Courts, State Law, and Concurrent Jurisdiction of Federal Questions, 48 Iowa L.Rev. 230, 238-39 (1963); Wright, Law of Federal Courts (3d ed. 1976) at 193-94.
[9] Testa, supra n. 8, 330 U.S. at 394, 67 S.Ct. 810.
[10] Douglas, supra n. 8, 279 U.S. at 388, 49 S.Ct. 355.
[11] Lloyd v. Regional Transp. Auth., 548 F.2d 1277, 1286 n. 29 (7th Cir.1977); Kampmeier v. Nyquist, 553 F.2d 296 (2d Cir.1977); United Handicapped Federation v. Andre, 558 F.2d 413 (8th Cir.1977).
[12] Leary v. Crapsey, 566 F.2d 863 (2d Cir.1977); Stubbs v. Kline, 463 F. Supp. 110 (W.D. Pa. 1978); Drennon v. Philadelphia Gen. Hosp., 428 F. Supp. 809 (E.D.Pa. 1977); Santiago v. City of Philadelphia, 435 F. Supp. 136 (E.D.Pa. 1977); NAACP v. Wilmington Medical Center, Inc., 453 F. Supp. 280 (D.C.Del. 1978); Boxall v. Sequoia Union High School District, 464 F. Supp. 1104 (N.D.Cal. 1979).
[13] Whitaker v. Board of Higher Educ. of City of N.Y., 461 F. Supp. 99 (E.D.N.Y. 1978); Michigan Paralyzed Veterans of America v. Coleman, 451 F. Supp. 7 (E.D.Mich. 1977); Doe v. Marshall, 459 F. Supp. 1190 (S.D.Tex. 1978).
[14] Davis v. Southeastern Community College, 574 F.2d 1158, 1163 n. 9 (4th Cir.1978) (question reserved because HEW regulations just became effective); Crawford v. Univ. of North Carolina, 440 F. Supp. 1047 (M.D.N.C. 1977), ("it cannot be said at this time" that administrative remedy is inadequate); Doe v. New York Univ., 442 F. Supp. 522, 523 (S.D.N.Y. 1978), (though skeptical of "the expeditiousness or efficiency" of the administrative remedy, requiring exhaustion, saying: "[I]t is simply too early to find this specific administrative remedy inadequate.")
[15] Section 505(a)(2) of the Rehabilitation Act, to be codified as 29 U.S.C., Section 794a(a)(2), supra n. 7, provides judicial review as in 42 U.S.C., Section 2000d-2:

Any department or agency action taken pursuant to section 2000d-1 ... shall be subject to such judicial review as may otherwise be provided by law for similar action taken... .
[16] Gurmankin, 556 F.2d at 186; see also Davis v. Bucher, 451 F. Supp. 791 (E.D.Pa. 1978).
[17] Shortly before the trial of this case, Clay County offered Zorick employment as a teacher of music and parttime teacher of wrestling.
[18] Kampmeier at 300, denying a preliminary injunction:

[P]ublic school officials have a parens patriae interest in protecting the well-being of their students; the defendants, relying on medical opinion, are concerned about the risk of injury to [the] child's one good eye. In view of the host of noncontact sports which remain open to the plaintiffs, we conclude that the balance of hardships does not tip decidedly in their favor.
[19] "`It is no objection to the exercise of [equity] jurisdiction that in the ever-changing phases of social relations a new case is presented and new features of wrong are involved where merely novelty in incident, not in principle, appears. A court of equity may not assume a jurisdiction which is non-existent, but it may amplify remedies or avail itself of new remedies and unprecedented orders to meet an emergency when such are based on sound principles and calculated to afford necessary relief without imposing illegal burdens.'" Florida E.C. Ry. Co. v. State, 77 Fla. 571, 580, 82 So. 136, 139 (1919), citing 10 R.C.L. 263.