384 So.2d 661 (1980)
Marsha HOLLIS, As Personal Representative for the Estate of Tiffany Helina Hollis, Appellant,
v.
The SCHOOL BOARD OF LEON COUNTY, Florida, Ned B. Lovell, As Superintendent of the School Board of Leon County, Florida, et al., Appellees.
No. JJ-496.
District Court of Appeal of Florida, First District.
May 19, 1980.
Rehearing Denied June 27, 1980.
*662 Edward S. Jaffry of Horne, Rhodes, Jaffry, Stephens, Bryant, Horne & Chapman, Tallahassee, for appellant.
J. Lewis Hall, Jr., Michael L. Granger of Keen, O'Kelley, Field & Ellis, Tallahassee, for appellees.
ERVIN, Judge.
This is an appeal from a final summary judgment absolving the Superintendent of Leon County[1] from any liability to the estate of Tiffany Hollis, aged five, arising from her death, caused by the alleged negligence of a school bus driver whose bus ran over her while she was crossing in front of it.[2] The court held that the record, including the estate's two-count complaint charging generally the superintendent with (1) vicarious negligence, and (2) active negligence in failing to have the school bus properly inspected or examined, showed only that the superintendent's activities pertained "to governmental discretionary functions which do not give rise to tort liability." We agree with appellant that genuine issues of material fact remain undecided and so reverse and remand.

I. SUMMARY JUDGMENT AS TO COUNT I, ALLEGING THE SUPERINTENDENT'S LIABILITY UNDER RESPONDEAT SUPERIOR
The superintendent's vicarious responsibility for the bus driver's negligence is determined by an answer to the following questions: Was the bus driver the employee of the superintendent as well as of the school board? If so, for purposes of suit under Section 768.28, is the superintendent an agency or subdivision of the state?
Section 768.28(1) permits actions against the state, its agencies or subdivisions for injuries, death, etc., caused by the negligent "employee of the agency or subdivision while acting within the scope of his . . employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant... ." (emphasis supplied)
*663 In the private sector, if the person actively responsible for an injury was in the employment of two or more persons as joint employers, both or all of them may be held liable. 53 Am.Jur.2d, Master and Servant, § 412, at 420 (1970). The general rule is that persons who combine to commit a wrong are joint tortfeasors[3] and are responsible for the acts of each other. Therefore, if both the superintendent and the board are considered joint employers of the driver, both may be vicariously liable to the same extent as private employers. We find the superintendent is an employer of the driver.
In cases involving interpretations of the Federal Tort Claims Act, after which the Florida act is modeled,[4] federal courts have held the primary test as to whether a person causing an injury is an employee of the government is who controls or has the right to control that person's work. See, e.g., Logue v. United States, 412 U.S. 521, 527-528, 93 S.Ct. 2215, 37 L.Ed.2d 121, 128 (1973); Gowdy v. United States, 412 F.2d 525, 534 (6th Cir.1969); Eutsler v. United States, 376 F.2d 634 (10th Cir.1967); Yates v. United States, 365 F.2d 663 (4th Cir.1966); Strangi v. United States, 211 F.2d 305 (5th Cir.1954); Lavitt v. United States, 177 F.2d 627 (2d Cir.1949). The rule in Florida as to non-public employers is the same. See, e.g., Mumby v. Bowden, 25 Fla. 454, 6 So. 453 (1889); St. Johns & H.R. Co. v. Shalley, 33 Fla. 397, 14 So. 890 (1894); Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503 (1927).
Applying the same test here,[5] we find abundant statutory authority placing control of the bus driver under the board and the superintendent. While the board is given "organization and control of the public schools of the district ...", Section 230.03(2) (emphasis supplied), we consider that within the broad statutory scheme, control is in fact diffused between both the school board and the superintendent. The superintendent, as the executive officer of the school board, Section 230.03(3), has responsibility for the administration of the schools and the supervision of instruction. Id. He has the right to exercise general oversight over the district school system in order to determine problems and needs, to recommend improvements, and to recommend to the school board the adoption of policy. Section 230.32(1), (3). Additionally, he recommends in writing to the board the employment of all instructional and non-instructional personnel. Section 230.33(7)(b). He recommends plans and procedures for providing facilities for the economical and safe transportation of pupils, Sections 230.33(1), 234.01, and he notifies the board of any school bus which does not meet all requirements of law. Section 234.02(2). Only after recommendations have been proposed by the superintendent does the board *664 exercise its option either to reject or adopt them. See, for example, Section 230.23(8). Finally the board may not reject the recommended employment of school bus drivers except for good cause. Section 230.23(5)(b).
We conclude the district school system is a hydra-headed organization whose day-to-day operations are overseen by its chief administrator, the school superintendent, but whose control is technically vested in the school board. Dual control, then, is placed in both the superintendent and the school board for the operation and administration of the district school system in Florida. It necessarily follows that both the superintendent and the board controlled the actions of the bus driver, and both must be considered his joint employers.
This conclusion is supported by our previous examinations of the superintendent's and the board's shared responsibilities. For example, we have refused to hold a school board immune from an unfair labor practice when it argued it acted in good faith on a superintendent's recommendation not to rehire a non-tenured refrigeration mechanic, Columbia Cty. Bd., etc. v. Public Emp. Rel. Comm., 353 So.2d 127 (Fla. 1st DCA 1977). We there observed that when the board routinely accepted the superintendent's hiring recommendations, it was sufficient proof of an unfair labor practice if the recommendations were tainted by the impermissible motives of the superintendent or other subordinate. More recently we sustained a trial court's order allowing a blind person the opportunity to demonstrate that he could function as a teacher in physical education at a public school. Zorick v. Tynes, 372 So.2d 133 (Fla. 1st DCA 1979). And, in rejecting the board's argument that its refusal to hire the applicant was justified because the superintendent's subordinate had not recommended his employment to it, we concluded that both "the board and the superintendent ... share . . vicarious responsibility for any unlawful purpose of the subordinate." Id. at 142.
It remains to be determined, however, whether the superintendent, under the provisions of Section 768.28(2),[6] may be considered an agency or subdivision of the state. The answer to this question once more is resolved by examining those federal cases which have addressed the question whether the employer of the negligent employee is an agency within the meaning of the Tort Claims Act. The cases generally state that the immediate employer of the allegedly negligent employee is a federal agency if the employer is an integral part of the government. Standard Oil Co. of California v. Johnson, 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942); United States v. Holcombe, 277 F.2d 143 (4th Cir.1960).
We think it is obvious the superintendent is an integral part of the state government. The district school superintendent, like members of the school board, is a constitutional officer. Article IX, § 5, Florida Const. (1968). While the superintendent may be appointed by the school board in a district in which the people by resolution approve the appointive system, Section 230.24, the Leon County School Superintendent has at all times been elected by the people of Leon County. Since he acts as administrator and chief executive officer of the board, who recommends the adoption of policy to the board, the board could not effectively function without his assistance. The superintendent then is an integral part of the government and must be considered an agency as that term is defined in Section 768.28(2).[7]
*665 We conclude that a public school bus driver serves two masters: the school board and the superintendent, and any negligent act committed by him within the scope of his employment subjects both to liability.

II. SUMMARY JUDGMENT AS TO COUNT II, ALLEGING THE SUPERINTENDENT'S NEGLIGENT FAILURE TO INSPECT OR MAINTAIN ADEQUATELY A SCHOOL BUS
We cannot accept the lower court's conclusion that the superintendent is absolved from any liability because he acted within the appropriate limits of his discretion. The discretionary function exception to tort claims against the state, judicially adopted in Florida,[8]Commercial Carrier Corp. v. Indian River Cty., supra, n. 5, is limited to functions occurring only at the planning level, not at the operational level, defined as the level at which policy is implemented. Id. at 1021. Thus when plans are completed and carried into effect, the operations implementing such plans are not immune from tort claims. Examples of such functions include the maintenance of traffic signal lights and stop signs, id. at 1022, and of a roadway and its shoulders. Wojtan v. Hernando Co., 379 So.2d 198 (Fla.5th DCA 1980). A more analogous situation to the issue before us occurred in Seaboard Coastline Railroad Co. v. United States, 473 F.2d 714 (5th Cir.1973), where the government raised the discretionary function defense to a tort claim filed against it by a railroad whose complaint alleged that the government's design of a drainage system caused diverted water to undermine the railroad's right-of-way. The court, in rejecting the defense, observed that once the government decided to build a drainage ditch, "it was no longer exercising a discretionary policymaking function and it was required to perform the operational function of building the drainage ditch in a non-negligent manner." 473 F.2d at 716.
Similar facts exist here. To carry out statutes mandating the creation of plans to provide for the safe transportation of students,[9] plans were not only proposed and adopted, but in fact implemented. Before the accident, a training program for bus drivers had been instituted in the Leon County school district, supervised by the superintendent, which, among other things, instructed the drivers to submit monthly reports reflecting the number of miles driven, the date of the buses' last mechanical inspection and the number of pupils transported. The district school's transportation department, supervised by the superintendent, also had the responsibility to inspect all buses periodically, as required by Section 234.02(1),[10] and at each inspection a safety check list including 22 components was filled in. The list, however, contained no space for improper placement of mirrors. Nor did the training sessions attended by the drivers include instructions for them to report to their supervisors the existence of any blind spots caused by improper mirror adjustment. As a result, the negligent bus driver, although aware of the defective condition for nearly four years before the accident, never made any report to his superiors concerning its existence because he considered he had no responsibility to do so; *666 moreover, the inspection form provided to him contained no space for mirror adjustment.
Despite the law's demand that the superintendent administer an inspection system designed to guard against potential hazards, he  like the bus driver  also failed to take any measures to correct the hazard. The general policy of the superintendent was not to anticipate any possible defective conditions in a school bus because his administration of the district school system was one of "management by exception", meaning that no inspection for potential hazards was undertaken unless a problem was specifically called to his attention. The end result of this curious management policy is that no one assumed the responsibility to correct the improper placement of the mirrors.
Once the school board and the superintendent implemented policy calling for both the training of school bus drivers and the inspection of the school bus transportation system, they were required to carry out the resulting operations without negligence.
The final summary judgment in favor of the superintendent is reversed as to both counts and the case remanded for further proceedings consistent with this opinion.
MASON, ERNEST E., Associate Judge, concurs.
MILLS, C.J., dissenting with opinion.
MILLS, Chief Judge, dissenting:
I dissent.
On 15 October 1975, Tiffany Hollis, age 5, was run over by a Leon County School Board bus and killed. Marsha Hollis, as personal representative of the estate of Tiffany Hollis, brought suit against Ned Lovell, as Superintendent of the School Board of Leon County; the School Board of Leon County; Alphonso Smith, the bus driver; Shield Insurance Company; and the Horace Mann Insurance Company.
Count I of the complaint alleged that "the Board and Superintendent, recommended, approved, employed, directed and supervised ... Smith ... and Smith was acting within the course and scope of his employment by the Board and under the supervision of the Superintendent." It was further alleged that "... not having been adequately trained or supervised by Defendants Board and Superintendent, ... Smith recklessly and negligently operated or maintained or controlled ..." the bus causing it to strike the decedent.
Count II of the complaint alleged that the Board and Superintendent failed to have the bus inspected or examined and allowed the bus to operate even though the mirrors placed around the bus would not reveal the presence of a small child in front of the bus.
Final summary judgment was entered in favor of the School Board, as to its active negligence, and in favor of the Superintendent, on the grounds that "... the alleged improper activities of Ned B. Lovell, individually and as Superintendent and ... the alleged activities constituting the alleged active negligence of the School Board of Leon County pertain to governmental discretionary functions which do not give rise to tort liability."
After this appeal was taken from the final summary judgment, a settlement in the amount of $40,000 between Hollis and the defendants School Board, Smith, and Shield was approved by the trial court.
The question before us is whether final summary judgment was properly entered in favor of the Superintendent. The Superintendent cannot be vicariously liable for the alleged negligence of Smith since the Superintendent was not Smith's employer. Therefore, we must determine only whether the Superintendent can be held liable for his own alleged negligence.
Basically, Hollis alleges that the Superintendent was negligent in two respects: (1) in failing to properly inspect, examine and maintain the school bus so as to permit its operation when the mirrors would not reveal a small child in front of the bus; (2) in failing to properly train and supervise Smith.
*667 Section 230.33(10) sets forth the duties of the Superintendent which relate to the transportation of school children.
"(10) Transportation of pupils.  Ascertain which pupils should be transported to school or to school activities, determine the most effective arrangement of transportation routes to accommodate the pupils; recommend such routing to the school board; recommend plans and procedures for providing facilities for the economical and safe transportation of pupils; recommend such rules and regulations as may be necessary and see that all rules and regulations relating to the transportation of pupils approved by the school board, as well as regulations of the state board, are properly carried into effect, as prescribed in chapter 234."
Section 234.02 sets forth the responsibilities of the Superintendent and the School Board for the safety of school children being transported.
"234.02 Safety and health of pupils, Maximum regard for safety and adequate protection of health shall be primary requirements which shall be observed by school boards in routing buses, appointing drivers, and providing and operating equipment, in accordance with all requirements of law and regulations of the state board.
(1) Each school board shall designate and adopt a specific plan for adequate examination, maintenance, and repair of transportation equipment. Examination of the mechanical condition of each school bus shall be made by a capable mechanic at least once each month that the bus is in operation.
(2) The superintendent shall notify the school board of any school bus which does not meet all requirements of law and regulations of the state board, and the school board shall, if such school bus is in an unsafe condition, withdraw it from use as a school bus until the bus meets said requirements...."
It is apparent that the statutory responsibility for the safe transportation of school children lies primarily with the School Board, not with the Superintendent. See Surette v. Galiardo, 323 So.2d 53 (Fla.4th DCA 1975). The superintendent's duties are limited. He is to see that the rules and regulations of the local school board and the state board are carried into effect and notify the school board if any school bus does not meet all the requirements of law and the state board's regulations. His only other duties involve making recommendations to the school board.
In the instant case, there is no allegation or contention that the school bus did not meet all the requirements of law and the state board's regulations. Further, the documentation attached to the motion for summary judgment establishes that the school bus in question was equipped in accordance with state law and regulation. Therefore, the only duties which the Superintendent allegedly could have breached in connection with the placement of the mirrors on the school bus, were those of recommending to the School Board "... plans and procedures for providing facilities for the economical and safe transportation of pupils... ." and recommending "rules and regulations as may be necessary." I agree with the trial court that these duties constitute discretionary functions which cannot provide a basis for tort liability. See Commercial Carrier Corp. v. Indian River Co., 371 So.2d 1010 (Fla. 1979).
It was also alleged that the Superintendent did not adequately train or supervise Smith. Section 230.33(7) sets forth the duties and responsibilities of the Superintendent in directing the work of the personnel of the school system.
"(7) PERSONNEL.  Be responsible, as required herein, for directing the work of the personnel, subject to the requirements of chapter 231 and in addition he shall have the following duties:
.....
(i) Direct work of employees and supervise instruction.  Direct or arrange for the proper direction and improvement, under regulations of the school board, of the work of all members of the instructional staff and other employees of the district school system; ..."
*668 In Commercial Carrier Corp. v. Indian River Co., supra, the Supreme Court suggested that the preliminary test set forth in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), be utilized to determine whether a certain function is an "operational" level function or a "planning" level function. Those functions which are "planning" level or "discretionary" functions are immune from tort liability. For a function to be considered a "planning" level function, the following questions must be answered in the affirmative:
"(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?"
In my judgment, the above questions must be answered in the affirmative.
In essence, Hollis is challenging the method the Superintendent has chosen for directing, training, and supervising the school bus drivers. It is my opinion that the determination of the proper direction of school personnel is a planning level function, the wisdom of which cannot be scrutinized by the judiciary. See Commercial Carrier Corp. v. Indian River Co., supra.
I would affirm the summary final judgment.
NOTES
[1] The Leon County School Board and an employee, the bus driver, were joined with the superintendent as parties in the same complaint; however, during the pendency of this appeal, the board and the driver settled the claim with the estate in the sum of $40,000, which was approved by the trial court. The release of the active tortfeasor does not of course serve also to discharge the tortfeasor vicariously liable because the Contribution Among Tortfeasors Act, specifically Section 768.31(5), has been interpreted to apply to all tortfeasors, whether their liability is active or derivative. Hertz Corporation v. Hellens, 140 So.2d 73 (Fla.2d DCA 1962); Florida Tomato Packers, Inc. v. Wilson, 296 So.2d 536 (Fla.3d DCA 1974); Sun First National Bank of Melbourne v. Batchelor, 321 So.2d 73 (Fla. 1975).
[2] The bus driver was unable to see the small child walk by because the bus's side mirrors were positioned in such a way as to inhibit his vision.
[3] We recognize that technically a private employer and his employee are not considered joint tortfeasors when a negligent act is committed by the latter while acting within the scope of his employment. See Phillips v. Hall, 297 So.2d 136 (Fla. 1st DCA 1974), stating that because the employer's negligence is merely derived from the active negligence of the employee, the plaintiff could not, after obtaining a judgment against an employer, bring a separate action against the employee. Still, the question whether or not the employer and employee come strictly within the classification of joint tortfeasors is immaterial to this action. Here, the school board, the superintendent and the employee were all joined in one suit. A non-governmental employer and his employee may be jointly liable to a plaintiff because, from their relationship, they are identified in the same tortious act resulting in the plaintiff's injury. Weaver v. Hale, 82 Fla. 88, 89 So. 363 (1921); Stinson v. Prevatt, 84 Fla. 416, 94 So. 656 (1922). Moreover, Section 768.28 permits an action joining both the public employer and employee. See District School Board of Lake County v. Talmadge, 381 So.2d 698, (Fla. 1980).
[4] Compare Section 768.28(1) with 28 U.S.C. § 1346(b), the latter exposing the United States to liability for money damages "caused by the negligent or wrongful act or omission of any employee of the Government... ."
[5] The Florida Supreme Court, when it adopted the operational/planning level test, also followed federal cases construing the discretionary function exception to tort claims, observing that the language in 28 U.S.C. § 1346(b) was practically identical to that in Section 768.28(5). Commercial Carrier Corp. v. Indian River Cty., 371 So.2d 1010, 1016 (Fla. 1979).
[6] Compare the definition of a state agency, as provided in Section 768.28(2), with that of a federal agency, set out in 28 U.S.C. § 2671. The latter states: "[T]he term `Federal agency' includes the executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States."
[7] It should be observed that the definition of agency in Section 768.28(2) is much broader in scope than it is in the Florida Administrative Procedure Act. Compare it with 120.52(1), Fla. Stat. (1977).
[8] Section 768.28 does not contain any provision specifically immunizing the state from liability for negligence caused by the exercise of a discretionary function.
[9] In interpreting the federal act, the courts generally hold that no discretionary function exception is involved when government officials are operating under mandatory statutes or regulations which they have a legal duty to observe and implement. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); Downs v. United States, 522 F.2d 990, 996-997 (6th Cir.1975); Griffin v. United States, 500 F.2d 1059, 1066 (3rd Cir.1974).
[10] The rules of the Department of Education also set out in great detail the responsibilities of the superintendent in administering the safe transportation of school children. Among other things he is required to organize a maintenance and repair service for school buses so as to keep them in first-class condition, to see that every precaution is taken to assure mechanical safety of equipment, to make periodic inspections of equipment, and, when unsatisfactory conditions are discovered, to recommend corrective measures to the school board. Fla. Admin. Code Rule 6A-3.18(7), (8)(a), (c).