FERGUSON, Judge.
Plaintiff sued his insurance agent, the insurance company, and the Department of Highway Safety and Motor Vehicles for damages resulting from an automobile accident which occurred subsequent to the alleged wrongful cancellation of his automobile insurance liability policy. The trial court entered summary judgment for all defendants.
The pertinent facts are as follows. On January 10, 1981, plaintiff purchased an automobile liability insurance policy from Commercial Union (the insurer) through his insurance agent. A binder, issued on January 11, 1981, provided coverage for a period not to exceed thirty days, and was to terminate upon the issuance of the policy applied for or the issuance of any policy affording similar insurance. The application for insurance, to which the binder was attached, provided that the policy term would run from January 11, 1981 to January 11, 1982 at a premium cost of $1142. On the application plaintiff represented that he had had no accidents or traffic violations within the past three years. No policy was issued within thirty days so the *377 binder was renewed on or about February 13, 1981, and expired again, on its face, on March 13, 1981. On or about March 17, 1981, Commercial Union notified plaintiff that “to continue [his] automobile insurance coverage” he had to pay an additional premium, which increased the premium cost to $1788. The reason given for the increase was Commercial Union’s discovery of a motor vehicle violation on plaintiffs driving record. The policy was nonetheless issued “in the latter half of March, 1981,” and reflected a coverage period beginning January 11, 1981 and ending January 11, 1982, at a premium cost of $1788.
On March 31, 1981, plaintiff’s agent sent to Commercial Union a copy of a recent Miami Herald article which detailed a history of plaintiff’s mistaken identification in both traffic and criminal cases with another “Jose Rodriquez.” In a memorandum to the insurer, the agent requested an extension of time to pay the additional premium because plaintiff’s attorney needed about fifteen days to resolve the confusion surrounding plaintiff’s driving record. By letter dated April 6, 1981, the insurer denied the request for an extension. Commercial Union cancelled plaintiff’s policy on May 3, 1981, having given notice of such cancellation on April 16, 1981.
Appellant alleged, and offered proof, that the Department consistently posted traffic violations or other derogatory entries to his record rather than properly charging them to the record of the other Rodriguez, that he repeatedly protested, and that the Department usually responded by making corrections to appellant’s computer record. On this occasion, appellant contends, the Department employee acted negligently by failing to heed the warnings of potential misidentification which were placed in the computer records of both Rodriguezes, and by not utilizing a “tiebreaker” system designed to verify the accuracy of postings when two drivers had identical identifying information. Appellant further asserts that the Department’s routine transmission of record data to insurance companies which rely upon such information when granting or denying insurance, cancelling policies, and setting premium rates, evidences the need for accurate maintenance of records.
One of the Department’s defenses is that it is not liable for negligence because the service it performs in collecting and disseminating traffic violation data is a planning function which is shielded by sovereign immunity, citing Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979). We reject that argument. The creation of the system is a planning function but the daily utilization of the system is an operational function not protected by sovereign immunity. See Willis v. Dade County School Board, 411 So.2d 245 (Fla. 3d DCA), rev. denied, 418 So.2d 1278 (Fla.1982) (creation of teaching position is planning function; filling of the position is operational); Hollis v. School Board of Leon County, 384 So.2d 661 (Fla. 1st DCA 1980) (creation of plans to provide safe transportation was discretionary but implementation of plans was operational).
It was alleged and shown that Men-cia Insurance Agency, Inc. had been appellant’s exclusive agent for automobile insurance since 1969, and that appellant relied upon Mencia to obtain proper coverage because he could not read or speak English. There was some evidence that Mencia did not do all that insurance agents are reasonably expected to do to prevent cancellation of an insured’s policy when a discrepancy exists between the Department’s records and the no-violations information furnished to the agent by the insured. Further, it was shown that after Commercial Union cancelled appellant’s policy for nonpayment of premium, Mencia did not communicate that cancellation information to appellant so as to put him on notice of a need to obtain coverage elsewhere. A genuine issue of material fact is presented as to the scope of Mencia’s undertaking as appellant’s agent, and whether there was a breach of that undertaking.
As to the insurer, plaintiff contends that not only was the insurance policy in full effect before the premium of $1788 was *378 assessed, but that there was insurance policy coverage in force at the quoted premium price of $1142 during all periods in which the binder had lapsed. The insurer contends that the $1142 premium agreement was of no legal effect after the binder terminated upon issuance of the policy, and that the policy was issued with an initial premium of $1788. As a result, the insurer argues, no “additional premium” was imposed and the “differential between the binder rate and the policy rate does not fall within the purview of Section 626.-9702(1).” [1]
We are not persuaded by the insurer’s argument on the point of law and hold that where the insurer issues a policy of automobile insurance, Section 626.-9702(1) applies to limit premium increases even if the higher premium is requested or imposed after the binder period has terminated, so long as the policy, when issued, overlaps both the period initially covered by the binder and any period of lapse. Even if it is not proved that plaintiff’s damages resulted from a breach of a duty on the part of any of the defendants, there would still remain as an issue of fact, whether the traffic violation for which plaintiff was allegedly convicted is one which evidences an increased risk of highway accidents. See Section 626.9702(1).
We conclude that none of the three defendants has demonstrated conclusively the absence of genuine issues of fact on the question of liability. See Holl v. Talcott, 191 So.2d 40 (Fla.1966).
Reversed and remanded.

. Section 626.9702(1), Florida Statutes (1983) provides:
(1) No insurer shall impose or request an additional premium for automobile insurance, or refuse to renew a policy, solely because the insured or applicant was convicted of one or more traffic violations which do not involve an accident or do not cause revocation or suspension of the driving privileges of the insured, without adequate proof of a direct, demonstrable, objective relationship between the violation for which the surcharge was imposed and the increased risk of highway accidents.